Mr. Justice James
delivered the opinion of the Court:
This is an action of ejectment, in which the plaintiffs, as heirs of Isabella Carney, seek to recover' possession of a certain lot in Washington on the ground that their ancestress was insane when she executed the deed under which 'the defendant claims title.
The bill of exceptions shows that the plaintiffs gave evidence tending to show that Mrs. Carney originally derived title from the defendant; that afterwards she, with her husband, executed to Daniel Callaghan, as trustee for Patrick Power, the deed now impeached; that the defendant claimed that Callaghan made this purchase for her benefit; that she *398 actually went into possession, and Callaghan and Power afterwards conveyed the premises to her. The plaintiff further gave evidence tending to show that Mrs. Carney was insane at the time of the conveyance to Callaghan, and that defendant had knowledge of such insanity. They also put in evidence the records of an .inquisition de lunático, in which the jury found that Mrs. Carney had been insane since the ist day of May, 1887, a period which, it may be observed, did not begin till more than a fortnight after the date of her deed to Callaghan. ■
The defendant gave evidence tending to show that- Power, the nominal beneficiary in the deed to Callaghan, had acted for her in the matter; that Power did not see Mrs. Carney during the transaction, and was not told that she was insane; that she, the defendant, never heard, until after the sale, that Mrs. Carney was insane, and that she was not in fact insane.
The consideration for the purchase was $500 in cash and the note of Mr. Callaghan for $500. The latter was' paid to Thomas F. Miller, committee of Mrs. Carney. It is stated in the bill of exceptions that, after Mrs. Carney’s death, Mrs. Burns, one of the plaintiffs, demanded of Miller the money that came into his hands as committee, and that on January 4, 1888, he advanced to her $90 and took from her a receipt in the following form, signed by herself and her husband:
“Washington, D. C., January 4, 1888. Due Thomas F. Miller ninety dollars advanced to us by him out of funds in his hands belonging to the estate of Isabella Carney, deceased. In case the said fund or any part thereof is adjudged to belong to Martha Burns, then the said sum of ninety dollars to be. charged against such part. And in the event that the said Martha Burns is not allowed a sufficient portion of said fund to cover the said ninety dollars, then we agree to pay to the said Thomas F. Miller the said sum of 'ninety dollars, or so much thereof as may be unpaid. Martha Burns, James Burns.”
This agreement was required by Miller because he was of opinion that Mr. Carney would be entitled, as husband, to *399 administer, use and appropriate the personal property of Mrs. Carney. In order to a settlement of that question, he after-wards filed a bill of interpleader.
Finally, Mr. Callaghan testified for the defendant that, at the time of the execution of the deed to him, there was nothing in the actions or manner of Mrs.. Carney to indicate that she was of unsound mind, that he never had heard that she was so, and had no suspicion of such a fact.
The defendant there rested, arid thereupon the plaintiff introduced evidence tending to show that Mrs. Burns did not understand that the $go advanced by Miller was to be taken from the funds in his hands for her benefit, but understood that if he could advance to her attorney the sum of $ go she would see that Mr. Miller should be repaid.
Instructions were offered by both parties, but the bill of exceptions requires consideration of only the third, fourth, fifth, and sixth requests of the defendant. The third was as follows:
“If the jury believe from the evidence that Isabella Carney, in April, 1887, at the time of the execution of her deed to Callaghan, was of unsound mind, yet if they further believe from the evidence that neither Mrs. Flynn nor her attorney, Callaghan, knew of such unsoundness of mind; that said parcel of land described in the deed was purchased by Mrs. Flynn in good faith for its fair value; that the purchase money was paid to Mrs. Carney or her attorney, one-half in cash and the other half in a promissory note, secured by a deed of trust on the property, and that said transaction was free from fraud, then the plaintiffs are not entitled to recover, and their verdict must be for the defendant.”
The bill of exceptions states briefly that this instruction was ‘ ‘ given with modification to the effect that if not 1 apparently sane,’ then actual knowledge not necessary.”
This instruction applied the doctrine of innocent purchaser to deeds of non compotes. The question of notice or good faith on the part of the grantee has no place in such cases. Whether the deed of a non compos be held to be absolutely *400 void or only voidable, the only matter to be considered is the capacity of the grantor. The rule may work hardly when the grantee has no reason to suspect his incapacity, but capacity is not to be imputed to an insane person in order to help another person. “The acts and grants of infants and lunatics,” says Mr. Washburn, “are regarded so far analo: -gous to each other as to be governed by the same rules, and their deeds may be avoided as well against the grantees of their grantees as against the grantees themselves.” 3 Wash., Real Prop., 225, and cases cited.
The defendant, however, was not injured by an error which gave her the benefit of conditions to which she was not entitled. The verdict against her necessarily found that the grantee did know that the grantor was of unsound mind, or that she was “not apparently sane.” The defendant lost on conditions favorable to her.
The fourth and fifth instructions may be considered together. They were as follows:
4. “If the jury believe from the evidence that Thomas F. Miller, after his appointment as committee of Isabella Carney, received the proceeds of the sale of the said real estate from Mr. Willoughby, the cash and note, applying a portion of the same to the maintenance and support of said Mrs. Carney; that he collected and received-the amount of the note given for the deferred payment of the purchase money, and as such committee authorized the trustees under the deed of trust securing said note to release said property from the lien of said deed of trust, then said sale, if the jury should believe that Mrs. Carney was of unsound mind at the time of making the same, was ratified'by said Miller as such committee, and the plaintiffs are not entitled to recover.”
5. “If the jury believe from the evidence that Mrs. Carney, at the time of the execution of the deed by her to Callaghan, was of unsound mind, yet if they further believe that the plaintiff, Mrs. Martha Burns, after the death of her mother, applied to Thomas F. Miller, who had been, under the decree of the court, appointed committee of her mother, and who *401 held in his hands as such committee what remained of the proceeds of the purchase money of said property, and demanded of him her share of said money (she knowing that said money was derived from the sale o'f said land by her mother in April, 1887), then the same was a ratification of said sale by her, and she would not be entitled to recover.”
We think that both of these requests were properly refused. Even if Mrs. Carney’s deed was only voidable, it was not in the power of her committee to ratify it. He -had only the management of her estate, and was not in privity with her title. No one but herself or heirs could validate her deed.
The fifth prayer was objectionable, even on the theory that the deed of an insane person is only voidable, and can, therefore be ratified by acts in pais. We conceive that the same degree of strictness (as to confirmation) applies in the case of an insane person’s deed which is applied to an infant’s deed. As to the latter, the Supreme Court said in Tucker vs. Moreland, 10 Pet., 75, 76: “Admitting that acts in pais may amount to a confirmation of a deed, still, we are of opinion that these should be of such a solemn and unequivocal nature as to establish a clear intention to confirm the deed after a full knowledge that it was voidable.’ ’
The instruction asked by the defendant does not show that Mrs. Burns knew when she applied for a part of the proceeds of the sale, that her mother was insane when she executed the deed in question. If it be said that this is indicated in the prayer by the statement that her application was made to her mother’s committee, it is to be said, first, that a fact is not sufficiently stated where it is to be gathered from the instruction only by argument and inference; secondly, that the fact of insanity at the time of making the deed is not to be gathered from the fact that her mother came afterwards to be committed to a guardian.
The most substantial ground, however, in which we hold that neither the fourth or the fifth prayer could be granted is, that the deed of an insane person is void, and therefore cannot be ratified by acts in pais. We so hold on the authority of Dexter vs. Hall, 15 Wall., 9.
*402 It was objected at the argument that the only question to be determined in that case was whether a power of attorney executed by an insane person was void or only voidable, and that the views expressed by Mr. Justice Strong concerning deeds of conveyance by such grantors were not binding on this court. It is true that the latter question was not an issue •in that case; nevertheless we feel bound to recognize, in so full and careful a discussion, a deliberate intention of the court to establish a rule. We may add that, had no such declaration been made, we should have held the' doctrine there announced. The contrary opinion Of some American courts — namely, that modem deeds of conveyance, executed by non compotes, were only voidable — would seem to have been caused by the omission of Sir William Blackstone to observe that authoritative decisions had distinguished these deeds from the ancient feoffments with the livery of seisin, and that it should have been considered, even in his time, settled that they were absolutely void, while feoffments were voidable only. This oversight was pointed out by counsel and by the court in the case above referred to. To the authorities there cited may be added that of Mr. Williams, Real Property, 136.
The last exception is to the refusal of the following instruction:
6. “It appearing from the evidence introduced by the plaintiffs in this case that the jury of inquest as to the unsoundness of mind of said Isabella Carney had before them at the time the fact that her property consisted solely of the proceeds of said sale by her of the real estate in controversy, and that in and by their verdict, in compliance with the mandate of the writ de lunático in that proceeding, they fix the date of the commencement of the unsoundness of mind of Mrs. Carney on May 1, 1887, subsequent to the date of said sale; it is not competent for the plaintiffs in this action to claim that she was of unsound mind at the time of said sale, and the verdict must be for the defendant.”
Whatever may be the effect of a finding by a jury to in *403 quire de lunático that a person was insane from and after a certain day, such a finding does not even purport to determine the status of such person before thát day. No one is affected by what is not found. This prayer, therefore, was properly refused. It may be added that we do not here determine the effect of the actual finding upon transactions made after the day fixed.

Judgment affirmed.