**Elizabeth H. EDMUNDS, Conservatrix of the Estate of Vivian G. Edmunds, Appellant,**

v.

**The EQUITABLE SAVINGS AND LOAN ASSOCIATION, Appellee.**

**No. 3936.**

District of Columbia Court of Appeals.

Argued Sept. 26, 1966.

Decided Nov. 14, 1966.

Rehearing Denied Nov. 28, 1966.

Scott P. Crampton, Washington, D. C., argued for appellant. Richard F. Swift, Washington, D. C., was on the brief for appellant.

Llewellyn C. Thomas, Washington, D. C., with whom Caesar L. Aiello, Washington, D. C., was on the brief, for appellee. C. Thomas McCally, Washington, D. C., also entered an appearance for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

Vivian G. Edmunds and Marie E. Lupton opened a joint savings account with appellee in 1951. In April 1964 appellant, through her attorney, notified appellee that she had been appointed conservatrix of the estate of Vivian G. Edmunds by the Circuit Court for Montgomery County, Maryland, and further stated that the passbook to the joint savings account could not be found. The receipt of this correspondence was acknowledged by appellee.[1] During January and February 1965 Miss Lupton attempted to withdraw some money and was informed by appellee that in order to do so without the passbook, the signature of her joint depositor would be required. Appellee subsequently received certain forms signed by both depositors whereupon it issued its check in the amount of $3,450.46, payable

1. Although appellant's letter also included an allegation as to the ownership of the fund and appellee's reply outlined the procedures for changiing the name of the account, we do not believe these matters are germane to the disposition of this appeal.

to Vivian G. Edmunds and Marie E. Lupton. The check was later endorsed by both payees and collected. In June 1965 appellant's attorney made a formal demand for payment of $3,450.46 and tendered to appellee a death certificate for Marie E. Lupton, the original passbook, and an executed withdrawal slip. The tender was refused, and appellant sued to recover the aforementioned amount. Cross motions for summary judgment were filed, and appellee's motion was granted.

We are initially faced with the question of whether the trial court's action could properly have been based on a finding that appellant lacked status to sue as conservatrix. Appellant was appointed under a Maryland statute authorizing conservatorship for "all or any part of the property" of a person "who is unable, by reason of advanced age, mental weakness (not amounting to unsoundness of mind), or physical incapacity, properly to care for his property."[2] Our Code authorizes the issuance of ancillary letters to, and the institution of suits in the District of Columbia by, the guardian of an infant or the committee of a mentally ill person appointed in another jurisdiction.[3] It makes no provision for obtaining ancillary letters of conservatorship. Procedures are available, however, for the appointment of a conservator for a nonresident who has property here.[4] Keeping in mind the principle that appointments of guardians and committees are functions of the legislative authority

delegated to equity courts and, as such, have no extraterritorial effect,[5] it is doubtful that appellant had the requisite status to sue here in her representative capacity without some affirmative act on her part to place her under the authority of our courts. We note, however, that in this jurisdiction it has been held that in the absence of an objection, the court may permit a foreign guardian to prosecute a suit here without his having secured ancillary letters.[6] Thus, although the trial court's decision could have been properly based on appellant's lack of status, we are without guidance as to the basis of its ruling and must therefore consider the case on its merits.

The issue before us then becomes whether appellee, knowing of appellant's appointment, had the duty to honor only the signature of the conservatrix and not that of the ward. This, in turn, depends upon the legal effect of the ward's signature. Neither of these issues has been considered by the Maryland courts.

The Maryland statutes regarding the appointment of conservators were, in their original version, almost verbatim copies of those of the District of Columbia which had been passed six years earlier.[7] Both specifically provide that the ward is not a person of unsound mind. Furthermore, the statutory language speaks in terms of "inability" rather than "incompetency." Since Maryland has already determined that persons of unsound mind lack

2. Md.Code Ann. art. 16 § 149 (1965 Cum. Supp.). There is no indication as to which of these classifications applies to Mrs. Edmunds or as to what part of her property appellant is the conservatrix. Moreover, except for appellant's allegations, the record is silent on the appointment of a conservatrix.

3. D.C.Code §§ 21–111, 21–112, 21–705, 21–706 (Supp. V 1966).

4. D.C.Code § 21–1501 (Supp. V 1966).

5. See generally In re Easton, 214 Md. 176, 133 A.2d 441, 444 (1957) ; 44 C.J.S. In-

sane Persons §§ 154, 155 (1945) ; 39 C.J.S. Guardian and Ward §§ 186, 190 (1944).

6. McLean v. American Security & Trust Co., 119 F.Supp. 405 (D.D.C.1954).

7. Compare Md.Code Ann. art. 16 §§ 149–153 (1957) with D.C.Code §§ 21–501 to 21–506 (1961), enacted in 1951). Later reenactments merely made changes in phraseology. Md.Code Ann. art. 16 § 149 et seq. (1965 Cum.Supp.) ; D.C.Code §§ 21–1501 to 21–1506 (Supp. V 1966).

the capacity to assent to or make a legal contract,[8] the basic question, then, is whether a person who is elderly, physically incapacitated, or suffering from a mental weakness, and for whom a conservator has been appointed, has capacity to contract. No such problem arises in the District because a procedure is available whereby a *lis pendens* may be filed when a conservator is to be appointed. This renders all contracts (except for necessaries) and all transfers of real and personal property by the ward void.[9] A similar provision is conspicuously absent from the Maryland statutes. Also absent is any language indicating that the appointment of a conservator *ipso facto* relieves the ward of his capacity to contract.[10] In addition, Maryland enacted these statutes (specifically stating that the ward is not of unsound mind) *after* her courts had ruled on the lack of capacity of persons who are of unsound mind. All this leads us to the conclusion that in Maryland, the acts of an adult person, for whom a conservator has been appointed under Article 16, Section 149, are valid and enforceable.[11] This does not leave a Maryland conservator without remedies, since, as noted supra, our courts can be used both to appoint him in this jurisdiction and to file a *lis pendens* here.

■ In the instant case, appellee had contracted with its depositors that no withdrawals would be permitted without the presentation of the passbook.[12] No one can question that this agreement could have been modified by the joint action of all the parties to the original contract. Appellee was thus free to permit withdrawals without the presentation of the passbook if all of the joint depositors had the capacity to contract and consented to the modification. The record shows that appellee procured the necessary signatures (the validity of which is not challenged) on both a "lost savings passbook receipt" and a savings withdrawal slip. It thereafter issued its check to the order of both depositors. Since all of the parties had the capacity to modify their original contract, appellee did nothing wrong when it released the funds in question and the trial court did not err in granting appellee's motion for summary judgment.

Other issues have been considered and are found to be without substance.

Affirmed.

---

8. See In re Easton, supra n. 5 at 133 A.2d 447, and cases cited therein.

9. D.C.Code § 21–1507 (Supp. V 1966).

10. See, e. g., the Rhode Island statute discussed in Whitmarsh v. McGair, 90 R.I. 154, 156 A.2d 83, 86–87 (1959).

11. See generally 29 Am.Jur. Insane and Other Incompetent Persons § 78 (1940). See Henkel v. Alexander, 198 Md. 311, 83 A.2d 866, 869 (1951); Doyle v. Rody, 180 Md. 471, 25 A.2d 457, 460 (1942).

Infirmities such as old age, physical incapacity and mental weakness may be factors in actions based on allegations of undue influence, but no such issue is presented here.

12. On oral argument, a dispute arose as to whether the page of the passbook on which this provision was printed had been before the trial court. Our decision renders this question moot, since the inclusion of the provision is most favorable to appellant, and we have included it as part of hte record for purposes of this appeal.