358 A.2d 639 (1976)
Annie CARTER, Appellant,
v.
Mrs. George E. SAXON, Appellee.
No. 9056.
District of Columbia Court of Appeals.
Argued July 9, 1975.
Decided May 24, 1976.
Rehearing and Rehearing en Banc Denied September 10, 1976.
*640 R. Kenneth Mundy, Washington, D. C., for appellant.
Albert F. Beasley, and Mark G. Griffin, Washington, D. C., for appellee.
Before KERN, NEBEKER and HARRIS, Associate Judges.
HARRIS, Associate Judge:
The trial court dismissed appellant's negligence action against appellee based upon the contention that appellant did not make a timely motion for substitution of parties pursuant to Superior Court Civil Rule 25. We conclude that the court erred, and reverse.
Appellant was employed by appellee as a housemaid one day per week. On February 2, 1972, when she was arriving for work, she allegedly slipped and fell on Mrs. Saxon's ice-covered front steps. Charging negligence in permitting the ice to accumulate so as to create a hazard, appellant sued her employer in October of 1972. During the ensuing 11 months, the parties' respective counsel undertook discovery and exchanged communications in anticipation of a November 1973 trial date.
In September of 1973, a petition for the appointment of a conservator for appellee was filed on behalf of herself in the Superior Court. See D.C.Code 1973, § 21-1501 et seq. In the petition, Mrs. Saxon alleged that "by reason of her advanced age and physical incapacity" she no longer was able to manage her own estate. The petition summarized the extent of Mrs. Saxon's estate, which was minimal, and suggested that the conservator be empowered to take charge of her property, receive income, and dispose of her only significant asset, which was her home. No mention was made of the pending civil suit against her. An affidavit filed in support of the petition by appellee's physician stated that she suffered "periodic senile dementia" characterized by "confusion and disorientation". On October 12, following a hearing, the court appointed a conservator for Mrs. Saxon, authorizing him to "take charge, control and management" of appellee's "estate, property and affairs". On October 25, counsel for appellee filed a "Suggestion of Appointment of Conservator for Defendant" in the negligence action. Appellant's attorney was served with a copy thereof.
Meanwhile, on October 16, appellant had retained new counsel. Shortly after entering his appearance on her behalf, he was informed of the conservatorship. The trial date was delayed indefinitely, but appellant's new counsel, appellee's attorney, and the conservator proceeded routinely to exchange additional discovery material, motions, and correspondence.
The case was set for trial on June 7, 1974, and the parties then assembled in the trial judge's chambers for the disposition of preliminary matters. Appellee's counsel orally moved that appellant's suit be dismissed for failure to have requested formal substitution of the conservator as the nominal party defendant. The court continued the case to permit the parties to submit the motion and a response thereto in writing. In addition to a response to the motion to dismiss, appellant filed a "Motion for Leave To Substitute Conservator". A hearing *641 was held on the motions, following which the court issued an order granting the motion to dismiss the complaint. The court saw no "excusable neglect" to justify granting appellant an enlargement of time within which to file a motion for substitution.[1]
Rule 25 deals with the substitution of parties, as does its almost identical counterpart, Fed.R.Civ.P. 25.[2] It provides in pertinent part as follows:
(a) Death.
(1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.
* * * * * *
(b) Incompetency. If a party becomes incompetent, the court upon motion served as provided in subdivision (a) of this rule may allow the action to be continued by or against his representative.
The trial court adopted appellee's argument that the ward of a conservatorship is "incompetent" within the meaning of Rule 25(b) and that the 90-day time limit of section (a)(1) must be considered to be incorporated into section (b). This would mandate the dismissal of an action against an incompetent party if a timely motion for substitution is not made after the fact of incompetency has been suggested upon the record. We conclude that this interpretation is erroneous. First, the mere imposition of a conservatorship upon a person's estate does not relegate that person to the status of incompetency for all purposes, nor does the filing of a "suggestion of the appointment of a conservator" carry the implication that the ward is thereby averring an incapacity to be sued. Moreover, we see no valid basis for superimposing the 90-day time limit of section (a)(1) onto section (b). These conclusions are supported by considerations of practicality as well as the general objective of ensuring a harmonious construction of the rules of procedure.
D.C.Code 1973, § 21-1501, provides that a conservator may be appointed for an adult who is "unable, by reason of advanced age, mental illness . . . or physical incapacity, properly to care for his property." The disability which the ward suffers may range in kind and degree from advanced age with accompanying physical infirmities to defective memory or mental illness. Other relevant factors include the complexity of the subject's business affairs and the availability of informal assistance from other persons. The appointment of a conservator may be predicated upon any one or a combination of these factors.[3]
*642 Mrs. Saxon was an elderly widow with no known relatives. She was in poor health and had suffered episodes of mental confusion. Her physician attested that during those lapses of understanding, she was not competent to handle her affairs, and that the duration and frequency of such intervals could not be predicted. At the time of the appointment of the conservator, Mrs. Saxon was convalescing in a nursing home and had no prospects of returning to her residence. While we do not contest the wisdom of the creation of the conservatorship, we fail to find, in these facts, such evidence of incompetency as necessarily would deprive appellee of the capacity to defend the suit in her own name.
Although we have not addressed this particular issue before, we have had occasion to note, in other contexts, the extent to which the creation of a conservatorship reflects upon the ward's mental competence. In Edmunds v. Equitable Savings and Loan Association, D.C.App., 223 A.2d 630, 631 (1966), speaking of the conservatorship statute, we stated:
[I]t specifically provide[s] that the ward is not a person of unsound mind. Furthermore, the statutory language speaks in terms of "inability" rather than "incompetency."
In Rossi v. Fletcher, 135 U.S. App.D.C. 333, 418 F.2d 1169 (1969), cert. denied, 396 U.S. 1009, 90 S.Ct. 568, 24 L.Ed. 2d 501 (1970), the circuit court held that the appointment of a conservator did not deprive a mentally competent ward of testamentary capacity. The court concluded that despite the statutory provision voiding the inter vivos transactions of a ward upon the filing of notice of lis pendens with the office of the Recorder of Deeds,[4] it was not Congress' intent to subject a ward to a general disability to perform acts of legal consequence.
We are unwilling to infer mental incompetency from the bare fact of old age, infirmity, or inability to manage property. We have no quarrel with appellee's argument that Mrs. Saxon, enfeebled as she was, could not have been expected to defend the negligence action unaided. Few laymen could be expected to do so, regardless of their mental competency. To concede this, however, is not to say that she lacked the capacity to remain as the named defendant in the suit, or that a representative would have to be sued in her stead in order for the action to proceed (or survive).
Moreover, even if we were to conclude that the imposition of a conservatorship automatically brought the ward within *643 in the concept of "incompetency" as used in Rule 25(b), we would not agree that the time limitation imposed by Rule 25(a) when the death of a party occurs is applicable when a party becomes incompetent.[5] Rule 25(a), authorizing substitution upon the death of a party, is designed to revitalize an action which otherwise would be unable to proceed on behalf of or against a party who no longer exists. The time limitation within which such a motion must be made was imposed in order to "keep short the time within which actions might be revived so that the closing and distribution of estate might not be interminably delayed."[6] No similar need exists for speedy resolution of an incompetent's affairs.
Our unwillingness to sanction dismissal of an action against one who is assumedly incompetent for failure to make a motion for substitution within a certain time limit also rests upon the need to achieve a proper consonance among other related rules. Superior Court Civil Rule 17, which is substantially identical to Fed. R.Civ.P. 17, deals with parties and various problems concerning the capacity to be sued. Part (c) of that rule, entitled "Infants and Incompetent Persons", authorizes the court to appoint a guardian ad litem or take any other action which it deems necessary to protect the interest of an incompetent person. Federal cases interpreting those provisions uniformly have held that no action is mandated by the rule if the individual is protected adequately without a guardian or other representative. See, e. g., Jacobs v. Board of School Commissioners, 490 F.2d 601, 604 (7th Cir. 1973), rev'd on other grounds, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975); Rotzenburg v. Neenah Joint School District of Winnebago County, 62 F.R.D. 340 (E.D. Wisc.1974). It would appear unjust to sanction dismissal of an action for failure to move for substitution of an incompetent's representative where no contention has been raised that the incompetent would be inadequately protected without such a substitution.
In the instant case, there was no need for substitution of the conservator to act as the defendant. Both appellee's attorney and the conservator actively participated in the suit, rendering to Mrs. Saxon what appears to have been full and competent representation.
Furthermore, should there have been facts which suggested that formal substitution of the conservator would have been desirable, such circumstances likely would have been within the particular knowledge of the conservator, the ward, and her attorney. Therefore, while the rule allows any party to move to substitute a representative as a nominal party, the preferred practice, in our judgment, is to put the burden of making such a motion on the party claiming a disability. This is particularly true in the instant case, in which appellee is relying upon a disability which did not render her presumptively incompetent, but rather merely raised a possible inference of incompetence. Conservatorship proceedings ordinarily are not adversarial, and thus the party disputing the ward's contentions as to competency would not have participated in the appointment process. We believe it should be the *644 conservator's duty to demonstrate that without substitution, the interests of the ward would be prejudiced.
Rule 9(a) of the Superior Court's civil rules, also identical to its federal counterpart, abolishes any necessity for pleading an opposing party's capacity to be sued. It additionally provides: "When a party desires to raise an issue as to . . . the capacity of any party to sue or be sued. . . he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." One alleging his or her incompetency as a party at the inception of a lawsuit thus has the burden not only of asserting such a claim, but also of supplying sufficient supporting facts to permit an informed determination of that issue. If Mrs. Saxon had been the ward of a conservatorship when the negligence action was filed, upon her or her representative would have rested the burden of raising and justifying a lack of capacity. We see no basis in law or equity for a different rule where, as here, the conservatorship is an intervening rather than a precedent circumstance in the progression of a lawsuit. The principles governing the situation in which a named party dies during the course of litigation are not analogous, for, unlike competency, death is not a contestable or ambiguous incapacity.
Finally, on the facts of this case the trial court's granting of appellee's motion to dismiss appears unduly harsh.[7] For more than seven months following the filing of the suggestion of the appointment of the conservator, appellant's attorney remained in active consultation with appellee's attorney and the conservator. One month prior to trial (and six months after the suggestion was on record), appellee's attorney filed a motion for supplemental interrogatories. That motion made it clear that appellee actively was pursuing the defense of the suit, by and through her conservator. Prior to the filing of that motion, appellant's attorney had inquired of the conservator whether it was his intention to continue to retain the ward's original counsel. Actions undertaken thereafter, including the motion for interrogatories, indicated that the same attorney would continue to represent the word. In fact, the case was pursued to the very threshold of trial before any party intimated that the defendant was named improperly or that the suit no longer was maintainable.[8]
Despite the relevance of such considerations, we do not mean to suggest that we decide this case on the equitable grounds of reliance or pursuant to the notion of "excusable neglect" embodied in Rule 6(b). We conclude simply that where, as here, incompetency has not been placed specifically in issue, it cannot be inferred from the bare suggestion of a conservatorship, and, further, that the 90-day time limit included in section (a) of Rule 25 does not control matters of competency pursuant to section (b) of that rule. The failure of appellant to obtain the formal substitution of appellee's conservator as the nominal party defendant transgressed no requirement of the rules of civil procedure. We therefore hold that it was error to dismiss appellant's cause of action for lack of such substitution.[9]
Reversed and Remanded.
NOTES
[1] Super.Ct.Civ.R. 6(b) authorizes the court to grant an enlargement of time to a party within which to act if it can be shown that "the failure to act was the result of excusable neglect".
[2] Superior Court rules are to be interpreted and construed in light of the Federal Rules where the corresponding provisions are literally or substantially identical. See Campbell v. United States, D.C.App., 295 A.2d 498, 501 (1972). However, this source of potential guidance is unavailable to us in the instant case as we have found no federal authority dealing with the precise question before us.
[3] In re William C. Kloman, D.C.App., 315 A.2d 830 (1974), upon which appellee relies heavily, does not hold otherwise. That case involved a challenge to an order appointing a conservator. The word denied that he was unable to manage his property and contended that he was physically well and mentally competent. The court sustained his challenge, stating that "unless there is evidence of a present inability to manage property by reason of mental weakness, the court is not warranted in appointing a conservator." Id. at 832. However, the court specifically noted that no other condition warranting a conservatorship could have been involved in that case since the ward was only 58 years old, was physically healthy, and recently had been discharged from Saint Elizabeths Hospital.
[4] D.C.Code 1973, § 21-1507, entitled "Lis pendens", provides that:

Upon the filing of a petition [for the appointment of a conservator] under this chapter, a certified copy of the petition may be filed for record in the office of the Recorder of Deeds of the District of Columbia. If a conservator is appointed on the petition, all contracts, except for necessaries, and all transfers of real and personal property made by the ward after the filing and before the termination of the conservatorship are void.
Absent this provision, the ward of a conservatorship is not relieved of the capacity to make a legal contract. See Edmunds v. Equitable Savings and Loan Association, supra, 223 A.2d at 632. There is no indication on the record of this appeal that a lis pendens filing was made to record the conservatorship imposed on Mrs. Saxon's estate. However, even if one had been filed or if the "suggestion of appointment of conservator" served as adequate notice in lieu thereof, see In re Justice, 135 U.S.App.D.C. 326, 418 F.2d 1162 (1969), the lack of capacity to contract would not be dispositive of the competency issue under Rule 25(b).
[5] Rule 25(b) allows a court to substitute an incompetent's representative and continue a suit "upon motion served as provided in subdivision (a)." "Service" is a term of art in the context of the civil rules, and its use in subdivision (a), with specific reference to Rules 4 and 5, assures us that the usage in Rule 25 is meant to be in the limited, technical sense of the term as understood in practice and is employed in the cited rules. The meaning of the word "serve" in subdivision (b), with the particular reference to its usage in subdivision (a), does not, in our view, encompass the making of the motion or establish the 90-day condition contained in 25(a), but contemplates instead by whom and upon whom (and where) such a motion is to be presented.
[6] Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947) (footnote omitted).
[7] We appreciate the fact that the trial judge felt compelled, based upon his interpretation of Rule 25, to grant the motion. He recognized that the "law does not favor forfeitures", and specifically noted his reluctance to take the action he did.
[8] That the parties were able to, and did in fact, pursue the suit without interruption despite the suggestion of conservatorship highlights the distinction between the substitution so clearly required for a deceased party and that which may or may not be necessary where the original party suffers any disability less certain or complete.
[9] On December 31, 1975, a suggestion of the death of appellee, Mrs. Saxon, was filed with this court. D.C.App.R. 43(a) provides in pertinent part:

If a party dies after a notice of appeal is filed or while a proceeding is otherwise pending in this court of appeals, the personal representative of the deceased party may be substituted as a party on motion filed by the representative or by any party. . .. If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the court of appeals may direct.
We have received no notification designating a personal representative of Mrs. Saxon, nor has any party moved for substitution pursuant to Rule 43(a). Since this appeal was briefed and argued on behalf of appellee prior to her death, we perceive the interests of her estate (and those of appellant) to have been satisfactorily represented. We therefore have declined to seek to effect a substitution of parties at this juncture. We note, however, that upon remand the suggestion of death filed upon the record of this appeal will trigger the 90-day time limit of Super.Ct.Civ.R. 25(a), and the parties thereafter must comply with the requirements of that rule in order for the action to proceed.