**718 ASSOCIATES, Trustee 718 NW Trust, Appellant,**

v.

**Bryant BANKS and Sheilla Banks, Appellees.**

Nos. 08–CV–1571, 09–CV–744.

District of Columbia Court of Appeals.

Submitted May 18, 2010.

Decided June 23, 2011.

Morris R. Battino, Washington, DC, was on the brief for appellant.

Jonathan K. Gitlen, Student Attorney (No. 12055), with whom Dorene M. Haney, Supervising Attorney, was on the brief, for appellees.

Before RUIZ, BLACKBURNE–RIGSBY and THOMPSON, Associate Judges.

BLACKBURNE–RIGSBY, Associate Judge:

Appellant brought this action seeking a non-redeemable judgment for exclusive possession of the property located at 718 Marietta Place, N.W., Washington, D.C. (the "Property"). Appellees Bryant and Sheilla Banks contend that they are legally entitled to continue living at the Property pursuant to a lease that they executed with the previous owner of the Property, Patricia Speleos. At trial, appellant argued that appellees' lease was void because (1) it was a forgery, and/or (2) Speleos was mentally incapacitated at the time she signed the lease. The trial court, however, upheld the validity of the lease. Specifically, the trial court found that (1) the lease was not forged; and (2) while Speleos was mentally incompetent when she signed it, her incompetence rendered the lease voidable at her election, as opposed to inherently void. Thus, the trial court determined that the lease was subject to ratification or disaffirmance by Speleos' authorized representative. In finding that a contract entered into with a mentally incapacitated individual is voidable and not inherently void, the trial court erred in concluding that the longstanding law of the District of Columbia, first stated in *Sullivan v. Flynn*, 20 D.C. (9 Mackey) 396, 401 (1892), and subsequently followed in *Martin v. Martin*, 270 A.2d 141, 143 (D.C.1970) ("*Martin II*"), is no longer applicable because it is contrary to the rule

followed in a majority of the states.[1] Therefore, we are constrained to reverse the trial court's order, declare the lease between appellees and Speleos void as a matter of law, and remand this case to Superior Court for proceedings consistent with this opinion.

## I. Background

Appellant first purchased a tax certificate to the Property on July 21, 1997, and was later issued a deed to the Property on August 24, 2001. Before appellant executed the deed to the Property, appellees had signed a lease with Ms. Patricia Speleos, the Property's former owner. Under the terms of the lease, appellees were to pay $500 per month in rent, and they had an exclusive option to purchase the Property at any time for $50,000.

In November 2001, as part of a separate proceeding, Superior Court Judge Kaye K. Christian found that Ms. Speleos, who was then eighty-four years old, was mentally incapacitated, as defined by D.C.Code § 21–2011(11) (2001). Judge Christian appointed Stephanie Bradley as conservator of Ms. Speleos' estate, and Ms. Speleos' nieces as guardians. Two months after finding Ms. Speleos mentally incapacitated, Judge Christian held a hearing regarding the status of seven real estate properties that Speleos sold in March 2001. At the hearing, Ms. Bradley contended that those sales occurred when Ms. Speleos was already mentally incapacitated.[2] Based on the evidence provided by Ms. Bradley, Judge Christian voided all seven of the March 2001 sales.

On August 5, 2003, appellant filed suit against Ms. Speleos (who was in poor health) and her estate to quiet title to the Property, which appellant had acquired at the July 1997 tax sale. Ms. Speleos passed away on July 5, 2005, and her sister, Ann E. Pizzulo, became Personal Representative of the Estate. On October 10, 2006, appellant and the Estate entered into a settlement agreement whereby the Estate promised to provide an affidavit "attesting that there are no current legal tenants and/or occupants in the Property, there are no valid leases regarding the Property, past or present, and that any lease regarding the Property executed during the period of 1990 through the date of decedent's death is void...." The Estate provided the affidavit, which was prepared by attorney Valerie Geiger and signed by Ms. Pizzulo.

On April 30, 2008, appellant filed the present action[3] in Landlord–Tenant Court seeking a non-redeemable judgment for possession of the Property on the grounds

1. Admittedly, the *Sullivan* rule is contrary to the general rule followed by a majority of states: contracts entered into with persons found to be mentally incompetent are not void, but rather voidable at the incompetent individual's election. *See, e.g., In re Morgan Stanley & Co.*, 293 S.W.3d 182, 193 (Tex. 2009) (Hecht, J., dissenting) ("The issue whether a party who executed a contract lacked the mental capacity to do so is different. The rule in Texas and most other jurisdictions is that the contract exists and can be ratified or avoided."); *see also Pappert v. Sargent*, 847 P.2d 66, 69–70 (Alaska 1993); *Doris v. McFarland*, 113 Conn. 594, 156 A. 52, 56 (1931); *In re Estate of Marquis*, 822 A.2d 1153, 1157 (Me.2003); *Krasner v. Berk*, 366 Mass. 464, 319 N.E.2d 897, 900 (1974); *Trepanier v. Bankers Life & Cas. Co.*, 167 Vt. 590, 706 A.2d 943, 944 (1997). However, absent en banc consideration by our court, we are constrained to follow the existing case law of the District of Columbia. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

2. As evidence that Ms. Speleos did not appreciate the nature and consequences of these sales, Bradley submitted evidence to Judge Christian that these properties had a combined tax-assessed value exceeding $500,000. Ms. Speleos received a total of $41,000 in return.

3. The appeal before us consolidates both the appellant's appeal of Judge Duncan–Peters' Order of Judgment in Favor of Defendants as well as the appellant's appeal of Judge Duncan–Peters' Order Denying Plaintiff's Motion for Reconsideration.

that Speleos lacked the mental capacity to enter into the lease under which appellees claim a right to occupancy,[4] whereas appellees maintained that they had a valid lease. In its order of judgment, the trial court found that "Ms. Speleos was incompetent when she entered into the lease agreement with [appellees]." The trial court reached this conclusion after considering all of the following evidence:

> (1) Judge Christian's declaration that Ms. Speleos was incompetent to handle her own affairs in November 2001; (2) Judge Christian's decision to void the March 2001 deeds in January 2002; (3) the timing of these deeds, *i.e.*, that they were [ ] entered into no more than a week after Ms. Speleos leased the subject property; (4) Dr. Lowy's testimony that it is highly unlikely that Ms. Speleos was competent in March 2001 (*i.e.*, the year the lease was entered into); (5) Ms. Bradley's [Speleos' conservator's] prior and current testimony regarding Ms. Speleos' state of mind during the relevant time period; and (6) the fact that Mr. and Ms. Banks [appellees] are the only individuals asserting that Ms. Speleos was competent and they have a vested interest in such a finding.

However, despite finding that a myriad of evidence demonstrated that Speleos was mentally incompetent at the time she entered into the lease with appellees, the trial court ultimately concluded that the lease was not void, but rather voidable. The trial court reached this legal conclusion after characterizing the matter as one of first impression in this jurisdiction. The trial court acknowledged that, while "[h]istorically, a conveyance or contract by an insane or *non compos mentis* individual was declared void, and not merely voidable ... [t]he modern view, however, is that such a transaction would be simply voidable."[5] The trial court then continued its legal analysis and stated that, "[a]lthough the District of Columbia has not considered this particular issue, several federal and state courts are in agreement that a contract deemed voidable as a result of the incapacity of one party is only voidable at the option of the incompetent, [her] committee thereafter appointed or [her] personal representative ...." (citations and quotation marks omitted; alterations in original).

While mostly relying on cases from other jurisdictions, the trial court also attempted to analogize the issue in the present case to issues presented in other contexts and addressed by our decisions. Specifically, the trial court cited *Martin v. Martin,* 240 A.2d 363, 365 (D.C.1968) ("*Martin I*"), for the proposition that "marriages contracted by persons who are mentally incompetent are voidable, not void."[6] The trial court also analogized

---

**4.** Appellant also asserted that Speleos' signature on the lease had been forged. The trial court found that the lease was not forged, however, and appellant does not challenge this finding on appeal. Appellant also argued that Speleos lacked the authority to lease the Property to appellees because, it claimed, title was transferred to appellant before Speleos signed appellees' lease. The trial court rejected this argument, however, because the deed likely was not signed until after appellees' lease agreement and appellant does not challenge this finding on appeal.

**5.** Although the trial court treated this question as a matter of first impression, the court cited *Sullivan, supra,* 20 D.C. (9 Mackey) at 401, an early case from this jurisdiction that is contrary to the trial court's ultimate legal conclusion that such contracts are voidable and not inherently void.

**6.** In deciding *Martin I,* we relied upon the language of the marriage nullification statute in effect at the time, which provided that marriages contracted by persons who have been adjudged mentally incompetent are void only "from the time when their nullity shall be declared by decree...." D.C.Code § 30–

the lease in this case with the facts in *Hurwitz v. Barr*, 193 A.2d 360, 360 (D.C. 1963), where we held that "the contracts of an infant are voidable at his option...."[7] In conclusion, the trial court determined that:

[b]ased on the analogous law found in the District of Columbia, the views espoused by the Second and Eighth Circuits, and in conjunction with the underlying public policy of voidability, the Court finds that contracts entered into by persons who are mentally incompetent are not void, but merely voidable at the election of the incompetent individual, *i.e.*, Ms. Speleos or her representatives.

Thus, the trial court focused on the actions of Speleos and her representatives to determine whether the voidable lease had been subsequently ratified or disaffirmed.

While the trial court acknowledged that there seemed to have been some "confusion" regarding the status of the lease, it ultimately concluded that Ms. Bradley, Speleos' conservator, did not disaffirm the lease because she never made an "unequivocal statement repudiating the lease agreement." Specifically, the trial court noted that while Bradley told appellees they had to vacate the Property, she also said that it "was not the highest priority." The trial court also found that Bradley was not clear about why she refused to accept appellees' rent payments. Finally, the trial court credited appellee Sheilla Banks' testimony

that Bradley at one point admitted the lease was valid, and the court noted that Bradley did nothing to have the lease set aside. After weighing all the evidence, the trial court found for appellees, concluding that the lease had not been disaffirmed, and therefore did not award possession of the Property to appellant.

Appellant then filed a motion for reconsideration, arguing that Bradley had, in fact, disaffirmed the lease and also emphasizing, in the alternative, that the Estate, through personal representative Pizzulo's signature of the settlement agreement, had disaffirmed the lease. In particular, appellant highlighted the affidavit that the Estate executed as part of the settlement, which said that "there were no valid leases, subleases, verbal rental agreements or permissive tenants permitted or allowed on the property." In denying the motion, the trial court reaffirmed its earlier determination that Bradley had not disaffirmed the lease because she was "never clear about her intentions." Ultimately, the trial court held that the affidavit did not disaffirm the lease because Pizzulo, the Estate's personal representative, "signed the affidavit without any knowledge about whether there were, in fact, any leases, valid or invalid, on the property." The trial court reasoned that because Pizzulo signed the affidavit without knowing whether there were any leases on the Property, she did not know "whether there was a contractual obligation to disaffirm," so the affidavit could not constitute a valid statement of disaffirmance.[8]

103 (1967); *see Martin I, supra,* 240 A.2d at 365. Our current marriage nullification statute contains identical language. *See* D.C.Code § 46–403 (2009 Supp.).

7. The trial court also cited, without discussion, to our opinion in *Edmunds v. Equitable Sav. & Loan Ass'n,* 223 A.2d 630, 632 (D.C. 1966). However, given the facts in this case, *Edmunds* is not on point. In *Edmunds,* we interpreted a Maryland conservatorship statute as allowing for an individual, for whom a

conservator had been appointed, to enter into a contract absent a finding of mental incompetence. *Id.* at 631–32. Here, the trial court specifically found that "Ms. Speleos was incompetent when she entered into the lease agreement with Defendants." Thus, *Edmunds* is inapposite.

8. The trial court also noted that the affidavit did not "state that the Estate 'disaffirms' the lease." The court determined that while it was unnecessary for the Estate to use the

## II. Analysis

On appeal, appellant challenges two key factual findings supporting the trial court's legal conclusion that the lease was not disaffirmed: (1) that Bradley never "clearly disaffirmed the lease"; and (2) that the Estate was "without any knowledge about whether there were ... any leases ... on the property." Appellant also argues that the trial court erred as a matter of law in reasoning that the Estate could not have disaffirmed the lease without specific knowledge that the lease existed. Lastly, appellant asserts that we should be compelled by *Sullivan*, the long-standing precedent in this jurisdiction, to void the lease because the trial court found that Speleos was mentally incompetent at the time she signed the lease.[9] Because we agree with appellant that *Sullivan* binds us to a determination that the lease was void as a matter of law, we need not— and do not—reach appellant's other grounds for appeal.

Whether a contract is void or voidable is a matter of law, and therefore our analysis begins with *de novo* review of the trial court's determination that the lease was not void *ab initio*, but merely voidable. *See DSP Venture Grp., Inc. v. Allen*, 830 A.2d 850, 852 (D.C.2003). In reaching this determination, the trial court relied heavily on cases from outside this jurisdiction, concluding that, "the District of Columbia has not considered this particular issue...." As such, the trial court opted to adopt the modern view, followed by a majority of the states, that "contracts entered into by persons who are mentally incompetent are not void, but merely voidable at the election of the incompetent individual,"—here, Ms. Speleos or her representatives. In reaching this conclusion notwithstanding *Sullivan* and *Martin II*, the trial court committed legal error.

This is not a matter of first impression in the District of Columbia. In 1892, the Supreme Court of the District of Columbia in General Term decided *Sullivan, supra*, 20 D.C. (9 Mackey) at 401, and held that "the deed of an insane person is void, and therefore cannot be ratified by acts *in pais*." While *Sullivan* may not represent the modern rule in contract law, it is bind-

---

precise term "disaffirm," it was necessary for the Estate to intend to disaffirm.

9. Although appellant's primary argument at trial focused on the inherent invalidity of the lease due to Speleos' mental incapacity, on appeal appellant largely accedes to the trial court's determination that the lease was voidable and not void. Here, appellant contends that, even assuming that the lease was not inherently void, the trial court's judgment still rests upon an error of law as well as two clearly erroneous findings of fact. Appellant argues that the trial court misapprehended the law when it reasoned that the Estate needed to have specific knowledge of appellees' lease in order to disaffirm it. Appellant also claims that the following factual findings were clearly erroneous: (1) that Speleos' conservator never made an unequivocal disaffirmance; and (2) that the Estate did not know about appellees' lease when the affidavit was executed. Appellant does, however,

ask us to find "that the lease agreement is void in accordance with" *Sullivan, supra*, 20 D.C. (9 Mackey) at 401 (1892) (holding that "the deed of an insane person is void, and therefore cannot be ratified by acts *in pais* "), and it is upon this argument that we base our decision. That appellant couches this argument in the language of equity is immaterial. We have previously held that an argument is sufficiently preserved, even if the precise argument is not raised in the parties' appellate briefs, as long as the claim was raised before the trial court. *See Technical Land, Inc. v. Firemen's Ins. Co. of Washington, D.C.*, 756 A.2d 439, 448 (D.C.2000); *see also Mills v. Cooter*, 647 A.2d 1118, 1123 (D.C.1994) (recognizing that "[t]he parties have addressed this issue in a slightly different way" than the court did). Such is the case here, where the record reveals that the trial court understood appellant's argument as Speleos "lack[ing] the capacity to enter into the transaction and, as a result, the lease is void."

ing upon this court. The United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has acknowledged the Supreme Court of the District of Columbia in General Term as its predecessor court,[10] and we have recognized that the decisions of the D.C. Circuit rendered prior to February 1971, as well as the decisions of this court, "constitute the case law of the District of Columbia." *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971). As neither this court *en banc* nor the D.C. Circuit (prior to 1971) has overturned or announced a departure from the holding in *Sullivan*, it remains the law in the District of Columbia.[11]

In *Sullivan*, the heirs of a property owner successfully sought ejectment of the buyer of the owner's property on the grounds that the sale was void due to the fact that the owner was "not apparently sane." *Sullivan, supra*, 20 D.C. (9 Mackey) at 397–400. The buyer appealed and sought a new trial on the grounds that the trial court wrongly denied its proposed jury instruction that the heirs ratified the sale by accepting the sale's proceeds as part of their inheritance. *Id.* at 400–01. In affirming the trial court's decision, the *Sullivan* court relied upon the U.S. Supreme Court's decision in *Dexter v. Hall*, 82 U.S. (15 Wall.) 9, 21 L.Ed. 73 (1872). In *Dexter*, the U.S. Supreme Court held that "a power of attorney executed by an insane person, or one of unsound mind, is *absolutely void*." 82 U.S. (15 Wall.) at 26

(emphasis added). Before ruling that such legal documents were not merely voidable, but rather void, the U.S. Supreme Court reasoned that:

> [I]t is difficult to perceive how one incapable of understanding, and of acting in the ordinary affairs of life, can make an instrument the efficacy of which consists in the fact that it expresses his intention, or, more properly, his mental conclusions. The fundamental idea of a contract is that it requires the assent of two minds. But a lunatic, or a person *non compos mentis*, has nothing which the law recognizes as a mind, and it would seem, therefore, upon principle, that he cannot make a contract which may have any efficacy as such.

*Id.* at 20. Moreover, the Court explained that while contracts with minors were merely voidable, and not inherently void, such a rule was unsatisfactory for the governance of contracts with persons found mentally incapacitated. *Id.* at 21. While a minor presumably would gain sufficient mental capacity as he or she matured, it was thought (at the time) that similar improvement cannot be expected in the case of a mentally incapacitated person, and, therefore, such a person would have "no protection if his contract is only voidable." *Id.; cf. Martin II, supra*, 270 A.2d at 143 (noting that, where the record is "completely lacking in evidence that appellant was of sound mind or had the requisite

---

10. *See John R. Thompson Co. v. District of Columbia*, 203 F.2d 579, 581 (D.C.Cir.1953) (recognizing the Supreme Court of the District of Columbia in General Term as its predecessor), *rev'd on other grounds*, 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953); *see also Cross v. United States*, 145 U.S. 571, 573, 12 S.Ct. 842, 36 L.Ed. 821 (1892) (explaining that "[t]he supreme court [of the District of Columbia] sitting at special term and the supreme court sitting in general term are the same tribunal, but the court in general term

exercises appellate powers, and is an appellate court").

11. The trial court, in its judgment in this case, cites to *Sullivan* as an application of the non-modern rule that "a conveyance or contract by an insane or *non compos mentis* individual was declared void, and not merely voidable," but the trial court declined to follow or acknowledge *Sullivan's* holding as binding, opting instead to adopt the persuasive authority from other jurisdictions that follow the modern rule.

mental capacity to execute any documents, ratify any acts of another, or authorize the signing of his name ... the previous adjudication of incompetence is *presumed* to be of continuing validity") (emphasis added).

The appellant in *Sullivan* sought to differentiate *Dexter* by arguing that its holding was limited to the specific legal documents at issue in that case, and that the U.S. Supreme Court did not explicitly extend its ruling to other contracts. *Sullivan, supra,* 20 D.C. (9 Mackey) at 402. However, the *Sullivan* court rejected that argument. While acknowledging that the U.S. Supreme Court's ruling in *Dexter* did not explicitly include all contracts, the *Sullivan* court "nevertheless [felt] bound to recognize, in so full and careful a discussion, a deliberate intention of the court to establish a rule." *Id.* And so, the then-highest court[12] in the District of Columbia held that a deed executed by a mentally incapacitated person is void *ab initio* and not subject to confirmation. *See id.* at 401–02.

Moreover, not only have we failed to overturn *Sullivan,* but we have explicitly followed it. In *Martin II, supra,* 270 A.2d at 143, we cited to *Sullivan*—and to *Dexter*—to support our holding that benefit papers filed by a war veteran who was adjudicated mentally incompetent were inherently void due to the veteran's mental condition. Specifically, we cited to *Sullivan* for the proposition that, "Appellant, while [mentally incompetent], was *incapable of executing contracts,* deeds, powers of attorney, or other instruments requiring volition and understanding." *Martin II, supra,* 270 A.2d at 143 (emphasis added).

Our recognition that *Sullivan* remains the law of this jurisdiction should not be viewed as a complete rejection of the trial court's thorough analysis of contract jurisprudence in its findings and judgment. We agree with the trial court's conclusion that American contract law has largely evolved since the days of *Sullivan,* and that the modern rule followed by a majority of states[13] is "that such a transaction would be simply voidable." Moreover, as

**12.** In 1893, Congress created the Court of Appeals of the District of Columbia—the subsequent predecessor court of the D.C. Circuit—as the local appellate court of general jurisdiction, thus relegating the Supreme Court of the District of Columbia to solely trial court status. *See Hyatt v. Doll,* 576 F.3d 1246, 1255–56 (Fed.Cir.2009), *vacated sub nom. Hyatt v. Kappos,* 366 Fed.Appx. 170 (Fed.Cir.2010).

**13.** However, we also recognize that a minority of states continue to adhere to the rule espoused in *Dexter* and *Sullivan,* or a variation thereof, that contracts made by incompetent individuals are void. *See, e.g., Lynch v. Garnes,* 227 Ark. 767, 301 S.W.2d 739, 745 (1957) (voiding the contracts of a party upon a finding of her mental incompetence); *Norman v. Norman,* 131 Ind.App. 67, 169 N.E.2d 414, 421 (1960) (quoting *Raymond v. Wathen,* 142 Ind. 367, 41 N.E. 815, 817 (1895) ("And where it is shown that such mental incapacity existed at the time of the execution of the deed or contract controverted, it is sufficient to avoid the same.")); *Krueger v. Zoch,* 285 Minn. 332, 173 N.W.2d 18, 20–21 (1969) (af-

firming a lower court's decision to void appellee's contract upon a finding of mental incompetence); *Fleming v. Consol. Motor Sales Co.,* 74 Mont. 245, 240 P. 376, 378 (1925) (explaining that under Montana law, "[a] person entirely without understanding has no power to make a contract of any kind .... [and] the contract is void ab initio") (internal quotation marks and citation omitted); *Fixico v. Fixico,* 186 Okla. 656, 100 P.2d 260, 260 (1940) (interpreting Oklahoma law as "inhibit[ing] a contract, designation of a power, and waiver of a right by [a mentally] incompetent person"); *Shepard v. First Am. Mortg. Co.,* 289 S.C. 516, 347 S.E.2d 118, 119 (1986) (citing *Elias v. Enter. Bldg. & Loan Ass'n,* 46 S.C. 188, 24 S.E. 102, 103 (1896) (holding that if party was insane at the time she executed the power of attorney, and holder of power of attorney had knowledge of that fact, then power of attorney was null and void)); *First State Bank of Sinai v. Hyland,* 399 N.W.2d 894, 896 (S.D.1987) (explaining that South Dakota law has adopted the historical rule that "nullif[ies] agreements made by mental incompetents who have contracted either entirely without understanding or after a judi-

the trial court noted by citing to analogous cases, District of Columbia law adopts the voidable rule in other legal contexts. *See Martin I, supra,* 240 A.2d at 365 (holding that statute provides that a marriage contracted by a person who was adjudged, and known to have been, mentally incompetent was voidable, but not void *ab initio* ); *Hurwitz, supra,* 193 A.2d at 360 (acknowledging the general rule that the contracts of a minor are voidable at the minor's option, and extending the rule to contracts between two minors).[14] In its order, the trial court explained that allowing persons found mentally incompetent to "void at their election contracts entered into during periods of infancy or incompetency is grounded in the public's interest in demanding legal protection of those individuals' personal as well as property rights . . . ." (internal quotation marks and citation omitted). It may well be that the majority rule that the contracts of persons found mentally incompetent are not inherently void, but merely voidable at their election, better protects both the personal and property rights of those individuals than the holding in *Sullivan* does. But the D.C. Supreme Court's decision in *Sullivan* and our own decision in *Martin II* constrain us from addressing the merits of that question here. We are bound by our

own rule that "no division of this court will overrule a prior decision of this court or refuse to follow a decision of the United States Court of Appeals [for the District of Columbia Circuit] rendered prior to February 1, 1971, and that such result can only be accomplished by this court en banc." *M.A.P., supra,* 285 A.2d at 312. Unless we convene en banc and decide to adopt the majority rule, we remain bound by *Sullivan* and the contracts of mentally incompetent persons are inherently void in the District of Columbia.

As *Sullivan* remains the law of the District of Columbia, the lease between Speleos and appellees was void as a matter of law because Speleos was mentally incompetent at the time that she entered into the lease agreement with appellees. In light of *Sullivan,* we are compelled to hold that the trial court's legal determination, that the lease was voidable instead of void, was in error. Accordingly, we reverse the trial court's order, and we remand for further proceedings consistent with this opinion.[15]

*So ordered.*

---

cial determination of incapacity has been entered"); *Gilliland v. Carpenter,* 183 W.Va. 356, 395 S.E.2d 779, 784 (1990) (affirming trial court's decision to void deeds "based on a combination of mental incompetency and inadequacy of consideration"); *In re Guardianship & Protective Placement of Evelyn O.,* 214 Wis.2d 434, 571 N.W.2d 700, 703 (1997) (stating that Wisconsin law "makes void all contracts entered into by an incompetent, except for 'necessaries'"), *review denied* 215 Wis.2d 423, 576 N.W.2d 279 (1997) *and* 215 Wis.2d 425, 576 N.W.2d 281 (1997). *See also* Susanna L. Blumenthal, *The Default Legal Person,* 54 UCLA L.Rev. 1135, 1241–43 (2007); Lawrence A. Frolik & Mary F. Radford, *"Sufficient" Capacity: The Contrasting Capacity Requirements for Different Docu-*

*ments,* 2 Nat'l Acad. Elder L. Att'ys J. 303, 317 (2006).

14. *See also In re Estate of Randall,* 999 A.2d 51, 53 (D.C.2010) ("voidable marriages include the marriage of a person unable by reason of mental incapacity to give valid consent," such marriages are not void *ab initio,* but are only void upon decree); *L.P. Steuart & Bro. v. Capital View Realty Co.,* 112 F.2d 583, 584 (D.C.Cir.1940) (stating that contract between an infant and another party is voidable, not void).

15. Due to the trial court's erroneous finding that the lease was voidable and had not been disaffirmed, the trial court explicitly withheld deciding whether appellees could prove that

they relied on the legally void lease agreement to such an extent that equity principles allow for appellees to retain possession of the Prop-erty. Our ruling today does not decide this issue.